HARRY V. SNEAD, Respondent, *v.* MAURICE BONNOIL, Appellant.

*False imprisonment — arrest for a felony of one guilty, without the knowledge of the officer arresting him, of a misdemeanor — when the latter offense does not justify the imprisonment.*

In an action to recover damages for false imprisonment there was evidence that, after the plaintiff had unsuccessfully attempted to pawn certain jewelry and silverware which were lawfully in his possession and which he carried in a small satchel, the defendant and another police officer, who exhibited no insignia of authority, touched him on the shoulder, saying, "What have you got in that bag;" that the plaintiff replied, "None of your business, take your hand off my shoulder;" that the defendant then said, "We are officers and *you are under arrest;*" and that upon the plaintiff inquiring, "What for ?" the defendant rejoined, "Well, we want to know what you have got in that bag;" that the plaintiff then asked them to show their authority for arresting him and offered to prove his ownership of the property; that he begged them to go with him to his residence where he could be identified; that they refused in a most brutal manner, calling him a vile name, swearing at him and beating him; that they then handcuffed him and took him in that condition to police headquarters, although they had no warrant for his apprehension.

*Held,* that the jury were justified in finding that the circumstances did not warrant the arrest;

That the fact that a search of the plaintiff at the police station disclosed that he was guilty of the offense of carrying concealed weapons at the time of the arrest, a fact unknown to the police officers at the time of the arrest, did not justify the unlawful arrest for the felony;

That, if the undisclosed misdemeanor did justify the arrest, the failure of the defendant to prefer that charge against the plaintiff until after he had charged him with being a "suspicious person," and had induced the magistrate to remand the plaintiff without bail for another day, in order to permit further inquiry to be made, constituted such a breach of the defendant's duty to take the prisoner before a magistrate without unnecessary delay and charge him with the offense, as rendered the defendant a trespasser *ab initio* and made him liable for false imprisonment.

VAN BRUNT, P. J., and INGRAHAM, J., dissented.

APPEAL by the defendant, Maurice Bonnoil, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 2d day of May, 1899, upon the verdict of a jury for $500, and also from an order entered in said clerk's office on the 8th day of May, 1899, denying the defendant's motion for a new trial made upon the minutes.

*William B. Crowell,* for the appellant.

*Robert L. Harrison,* for the respondent.

BARRETT, J.:

The action is for a false imprisonment. The defendant and one Cottrell, both police officers, arrested the plaintiff without a warrant. The circumstances, as detailed by the defendant in his testimony, were probably sufficient to justify the arrest. They showed ground for the suspicion, and possibly reasonable ground for the belief, that the plaintiff had not come honestly by the silverware and jewelry which he then had in a small satchel, and which he had just attempted to pawn. There was, however, a conflict of testimony with regard to the attendant circumstances. The plaintiff gave an entirely different version of them from that given by the defendant. According to the plaintiff's version, there certainly was not enough to justify any fair-minded man in the belief that he had committed a felony; or, at the very least, the question on that head was for the jury. The plaintiff testified, in substance, that he had rooms at No. 98 Fifth avenue, where he had been living for seven or eight months; that on the 8th of November, 1893, he put some silver-

ware and jewelry (which was lawfully in his possession and which he was authorized to dispose of) into a small satchel, and went to a pawn shop with the intention of pawning it. The pawnbroker examined the property, but would not advance the sum which the plaintiff required. He thereupon put the property back into the satchel and started for home. It was then about six o'clock in the afternoon. He had gone but a short distance when the defendant and Cottrell came up behind him and touched him on the shoulder, saying, "What have you got in that bag?" The plaintiff turned and saw these two men, who were entire strangers to him and who exhibited no insignia of authority. He replied at once, "None of your business; take your hand off my shoulder." The defendant then said, "We are officers, and *you are under arrest.*" The plaintiff inquired, "What for?" and the defendant rejoined, "Well, we want to know what you have got in that bag." The plaintiff asked them to show their authority for arresting him, and offered to prove in a very few minutes his ownership of the property. He begged them to go with him to his residence, and said that the janitor there would prove to them who he was. They refused in a most brutal manner, calling him a vile name, swearing at him, and even beating him. They then actually handcuffed him and took him in that condition through the streets to police headquarters.

The verdict conclusively shows that the jury believed this testimony, and decided that the circumstances which the plaintiff thus narrated failed to furnish reasonable ground for the belief that he had come dishonestly by the property in the bag, and that these circumstances were consequently insufficient to justify the arrest. The question on that head was fairly submitted to the jury, and the result is that the arrest was a trespass, and, we may add, an aggravated one.

It is, however, sought to justify the arrest upon the ground that, although there may have been no reasonable cause to believe that the plaintiff was guilty of a felony, yet he was in fact guilty of the misdemeanor of carrying a concealed weapon, namely, a loaded pistol. The contention is that, although the pistol was actually concealed when the arrest for the felony was made, yet the misdemeanor of carrying it was then and there committed in the presence, as distinguished from the sight, of the officers. It is

true that the plaintiff then had upon his person a loaded pistol, and the defendant says that Cottrell suspected as much. The pistol was not drawn or exposed to view, but Cottrell — so the defendant testified — called out, " Look out, Maurice ; he has got a gun in his pocket." As we have already seen, the jury disbelieved the defendant's testimony. But, further, the learned trial justice, at the request of the defendant's counsel, instructed the jury that, if the officers arrested the plaintiff for the offense of carrying a concealed weapon, the defendant was not liable. Thus the jury, by their verdict, found that the arrest was solely for the felony. It is a little difficult to understand, under these circumstances, what bearing the fact that the plaintiff then had in his possession a concealed weapon, and was subsequently fined for that offense, can have upon the question whether this arrest for the felony was legal or illegal. He was not arrested for carrying the pistol. So the jury has necessarily found. He was arrested solely for the felony. Subsequently, when it was found that the defendant's position with regard to the felony was untenable, the plaintiff was detained upon the supplemental charge of carrying a concealed weapon. The justification *pleaded* for the arrest is that the defendant and his fellow officer had reasonable cause to suspect that the plaintiff was committing a felony. There is not a word in the answer justifying the original arrest upon the ground that a misdemeanor was being committed in their presence. The only allusion to the pistol to be found in the answer is the statement that, *after the plaintiff had been arrested and taken to the police headquarters*, the defendant found a pistol in his hip pocket. The justification cannot be separated from the cause assigned for the arrest, and applied to an unassigned cause. The right to arrest without a warrant depends upon the relation of the attendant circumstances to the specific accusation. There can be no general right to arrest a citizen for an undisclosed offense. The statute requires the officer to inform the arrested person of his authority and the cause of the arrest, except when the person arrested is in the actual commission of a crime. (Code Crim. Proc. § 180.) The latter exception relates to an open and visible crime, or to one brought to light at the time of the arrest. Where there is no overt act of criminality, or visible offense committed in the immediate

presence of the officer, he must inform the arrested person of the cause of the arrest. He cannot arrest a man for one cause and, when that is exploded, justify for another. Such a doctrine would be an incentive to the loosest practices on the part of police officers and a dangerous extension of their sufficiently great powers. They cannot be too firmly told that there is no such lawful thing as an arrest without an apparent or disclosed cause, to be justified thereafter by whatever may turn up. If the arrest here had been upon a void warrant, the defendant's position with regard to the misdemeanor would have been substantially the same as it now is. He could with equal propriety have said, " I arrested the plaintiff on the warrant for the felony. I did not arrest him without a warrant for the misdemeanor committed in my presence. Had I known, however, that he was carrying a pistol, I might have arrested him therefor." The plain answer would be, " But you did not do it. You cannot arrest a man merely because, *if all were known, he would be arrestable.* You arrest him for some specified cause, and you must justify for that cause."

This question was presented in *Murphy* v. *Kron* (8 N. Y. St. Repr. 230). There the arrest was under a warrant, but it was unlawfully executed in the night time. It was held that there was a false imprisonment the moment the defendants took the plaintiff into custody under the warrant. When the officers demanded admittance to the plaintiff's house he fired off a revolver. They defended their action upon the ground that, as the revolver was then used in their presence, under circumstances which constituted a crime, they were justified in arresting the plaintiff. But the court — Justice HAIGHT writing — held that they were bound by the arrest under the warrant and could not offer another cause sufficient to warrant the plaintiff's apprehension in justification of their action.

There is still another reason why the defendant should be held in this action. Even if the arrest was justified because, as matter of undisclosed fact, the plaintiff was carrying a concealed weapon, there was a distinct breach of the defendant's subsequent duty. That duty was to take the plaintiff before a magistrate without unnecessary delay and charge him with the offense. His failure to do this made him a trespasser *ab initio* and liable for false impris-

onment. (*Pastor* v. *Regan*, 9 Misc. Rep. 547.)   In the latter case
Justice RUMSEY said : " The rule laid down in the *Six Carpenters'*
*Case* (6 Coke, 146) that if a man abuse an authority given him by the
law he becomes a trespasser *ab initio* has never been questioned.
Indeed, the rule is not questioned in this motion, but the suggestion
is made by the counsel for the defendant that this rule does not
apply to the case of an arrest, but only to cases of unlawful or other
seizures of property.   That does not seem to be the case here.   In
the case of *Tubbs* v. *Tukey* (3 Cush. 438) the precise question pre-
sented here was presented to the court, and it was held that the rule
laid down in the *Six Carpenters'* case applied to cases in which the
arrest was legal, but the subsequent detention was illegal and
unreasonable."

The case of *Brock* v. *Stimson* (108 Mass. 520) was also cited, a
case which fully supports the rule there laid down.

Let us now look at the facts of the present case with relation to
the question of unlawful detention.   The plaintiff was arrested
upon the evening of the eighth of November.   He was then locked
up at police headquarters for the night.   Upon the morning of the
ninth the defendant and Cottrell took him before a magistrate and
there charged him with being a " suspicious person."   They then
made no charge of carrying a concealed weapon.   On the contrary,
they asked the magistrate to remand the plaintiff to their custody
for another day to enable them to make inquiries about him and
about the property which they suspected he had stolen.   They suc-
ceeded in inducing the magistrate to do this, and accordingly the
plaintiff was confined for another day and night at police headquar-
ters while they prosecuted their inquiries.   He was again taken
before the magistrate on the morning of the tenth.   Then the
defendant and Cottrell, having concluded that they could not sus-
tain their original accusation *for the first time* — we mean for the
first time in any court or before any magistrate — charged the
plaintiff with the misdemeanor.   He was thus detained from the
morning of the ninth until the morning of the tenth unnecessarily
and illegally — and deprived of the right to give bail — so far as
the charge of carrying a concealed weapon was concerned.   Thus
the officers utilized the felony charge to detain the plaintiff for at
least twenty-four hours beyond the time when he was entitled to his

discharge upon bail upon the misdemeanor charge. And the latter charge, though entered alternatively on the blotter at police headquarters, was only made *to the magistrate as a last resort* when it was found that the real charge upon which he had been detained could no longer be adhered to. Upon principle and authority this conduct of the defendant made him liable as a trespasser *ab initio*. Beyond peradventure he was liable for every hour that he detained the plaintiff after he and his associate secured the remand from the magistrate for a reason which could not have availed them had they then charged the plaintiff with the misdemeanor.

Upon both of the grounds discussed we think the judgment was right and should be affirmed, with costs.

RUMSEY and McLAUGHLIN, JJ., concurred; VAN BRUNT, P. J., and INGRAHAM, J., dissented.

INGRAHAM, J. (dissenting):

I am unable to concur in the affirmance of this judgment. The action is for false imprisonment, the charge against the defendants being that they (the defendants) " Maliciously and with intent to injure the plaintiff by force compelled plaintiff to go with them to the Central Police Office or Headquarters, situate in said city of New York, and there imprisoned this plaintiff, and then and there detained him, restrained of his liberty for the space of forty-eight hours or thereabouts, without reasonable cause and without any right or authority so to do." The defendants, who were police officers of the city of New York, denied this allegation of the complaint and alleged that they saw the plaintiff enter a pawn shop upon Sixth avenue with a large bag in his possession which contained a large quantity of silverware; that they asked the plaintiff to explain where he received the silverware and bag, which the plaintiff refused to do; that they took the plaintiff to police headquarters to make a proper and satisfactory explanation to the defendants' superior officers; that the defendants then found concealed in the plaintiff's hip pocket a six-barrel revolver, and found in the satchel which the plaintiff carried eighty-three pieces of silverware; that on the morning of the 9th day of November, 1893, the day following, the plaintiff was arraigned before a police justice, who remanded him for examination; that on the morning of the 10th of Novem-

ber, 1893, the plaintiff was taken before the police justice and
bailed in the sum of $300, upon the charge that the plaintiff was car-
rying a concealed weapon ; that such proceedings were thereafter had
that, at the Court of Special Sessions, on the 28th day of December,
1893, the plaintiff was found guilty as charged and fined ten dollars ;
and that the defendants, having reasonable cause to suspect that the
plaintiff was committing a felony, arrested and brought him before
Police Inspector McLaughlin at headquarters, there to be dealt with
according to law.

From the evidence of the plaintiff it appeared that he was arrested
on the night of the ninth of November ; that when the defendants
took the plaintiff to police headquarters he was taken before Police
Inspector McLaughlin, and was subsequently searched by a police
sergeant in charge and a weapon found upon him.   It also appeared
from the blotter at police headquarters that the plaintiff was held
for a violation of a corporation ordinance, and that he was admitted
to bail on November tenth in the sum of $300.    There was a note
to this entry on the blotter which stated that the plaintiff was
arrested on "suspicion of having stolen a valise containing a quan-
tity of silver-plated ware, which he was trying to dispose of when
arrested ; the officers were unable to find owner for the plate,
and charged him with violation of corporation ordinance, he having
a loaded revolver in his possession when arrested." Upon the
plaintiff's own testimony he was guilty of a misdemeanor when
arrested.   The pistol was found in his pocket, and there is a state-
ment in the testimony of the defendants, which is not contradicted,
that when the plaintiff was arrested he put his hand to his hip
pocket, and that one of the officers then said to the other that the
plaintiff had in his possession a firearm.   At the end of the plain-
tiff's case counsel for the defendants moved to dismiss the complaint
on the ground that no facts had been shown sufficient to constitute
a cause of action.   This motion was renewed at the end of the case
and was denied, and the defendants excepted.   I think this motion
should have been granted.   As before stated, the action is for
false imprisonment.   The very foundation of an action for false
imprisonment is an illegal detention.   (12 Am. & Eng. Ency. of Law
[2d ed.], 726.)   "If the detention, therefore, is not positively

illegal, no action for false imprisonment can be maintained, no matter at whose instigation the act was done, or by what motives actuated;" and "an arrest made without warrant by an officer of the law is not a false imprisonment * * * if, in the presence of the officer arresting, a misdemeanor had been committed by the person taken into custody." (Id. 740.) By section 277 of the Consolidation Act (Chap. 410, Laws of 1882) it is provided that "The several members of the police force shall have power and authority to immediately arrest, without warrant, and to take into custody any person who shall commit, or threaten, or attempt to commit in the presence of such member, or within his view, any breach of the peace or offense prohibited by act of the legislature, or by any ordinance of the city." These defendants being thus authorized to arrest the plaintiff without warrant, if, in their presence, he violated an ordinance of the city of New York, or committed a misdemeanor, arrested the plaintiff when violating such an ordinance, and when guilty of a misdemeanor, in having in his possession a concealed weapon. The plaintiff, when arrested, was guilty of a crime, and by express provision of the Consolidation Act the defendants were authorized to arrest him. Yet it was held in the court below that the arrest and detention were illegal; and this in the face of the fact that the plaintiff was held by the magistrate before whom he was taken, and was subsequently tried by a court of competent jurisdiction for the offense and convicted, which conviction, upon appeal, was affirmed.

This is put upon the ground that the defendants arrested the plaintiff for another offense which was unjustified. In the view that I take of this question it is unnecessary to consider whether the defendants were justified in arresting the plaintiff under the circumstances detailed by the plaintiff in his testimony. The rule is well settled that an arrest by an officer of the law is not a false imprisonment if the officer arresting has reasonable ground to believe that a felony has been committed and that the person arrested was the guilty party. (1 Am. & Eng. Ency. of Law, 740.) I am not prepared to say that where a police officer sees a party with a bag full of what appears to be silverware going into a pawn shop after dark, and trying unsuccessfully to pawn the silverware, he has not the right to take the person into custody upon the refusal of the person to explain how he came in possession of the articles which

he had endeavored to pawn. The circumstances were certainly suspicious. The welfare of the community and the safety of its citizens depend upon the active vigilance of the police in watching for lawbreakers, and I cannot but think that a police officer is justified in calling upon a person acting under the circumstances detailed to explain his possession of the articles which he had sought to pawn, and that, in the absence of a sufficient explanation, to take the person into custody pending an examination; but in this case it is not necessary that we should determine that question, because here the defendant, when arrested, was actually engaged in violating a corporation ordinance, and was committing a crime by having in his possession this concealed weapon. It seems to me that it was entirely immaterial upon what ground the plaintiff was arrested, or with what offense he was charged by the officer when arrested. When he was arrested he was committing a crime for which he was duly convicted by a court of competent jurisdiction, and punished. That crime was committed in the presence of an officer and, even if the officer had no knowledge of it at the time of the arrest the arrest cannot be illegal if, when arrested, the person arrested was actually committing a crime for which he was afterwards held and convicted. There is nothing in the statute or the rule of law that requires that the officer shall see the offender commit the crime. It is enough if committed in his presence. That this plaintiff was held at police headquarters for the crime of carrying this concealed weapon appears from his own evidence and from the entry in the police blotter; but I do not see how this appellant could be held chargeable for the detention of the plaintiff at police headquarters. The defendants arrested the plaintiff, took him to police headquarters and delivered him over to their superior officer who caused him to be searched, and upon such examination he was found to have committed a crime. The inspector ordered him to be detained, and from the record upon the blotter it would appear that he was held for this offense, but any claim that the arrest was illegal is answered by the fact that he was shown to have been committing a crime when arrested. Of course, when an officer attempts to arrest a person without a warrant the burden is upon him to show that, at the time of the arrest, the person was actually engaged in the commission of the crime, but when that fact

appeared, whether the officer had at the time of the arrest satis-
factory evidence of it or not, the act of the officer in making the
arrest is not illegal. The case of *Murphy* v. *Kron* (8 N. Y. St. Repr.
230) is not in point. In that case the defendants were police offi-
cers and attempted to arrest the plaintiff on a warrant for stealing a
dog of the value of ten dollars. The arrest was at night, when no
direction had been made for the execution of the warrant at night.
It appeared that after the defendant had rapped at the outer door
of the house, some conversation took place between the plaintiff
and the defendants and that the defendants demanded admittance,
stating that they were officers of the law, and thereupon the plain-
tiff fired off a revolver in the house. The defendants asked the
court to charge that if the plaintiff aimed or discharged the pistol
at or towards any human being, that constituted a crime, and for
that the defendants were justified in arresting the plaintiff. This
request was refused and an exception taken ; but in that case no
charge was made by the officers before the magistrate, or at any other
time, that the plaintiff had committed a crime in discharging the
revolver, and the decision of the court was expressly put upon the
ground that after they had taken the plaintiff to the station house the
warrant was returned indorsed thereon that the plaintiff had been
arrested " by virtue of the within warrant," and that no complaint was
made against the plaintiff upon any other crime. Upon those facts it
was held that the request was properly refused. No authority was
cited by the court and that case cannot be considered as an authority
for holding that the arrest was illegal where the person arrested was
actually committing a crime when arrested and a charge was subse-
quently made against him for the crime and he was held and con-
victed on such charge. It has been held that it is not a false
imprisonment where a person is convicted before a trial justice on
two distinct offenses and is committed to the house of correction
under two warrants, one legal and the other illegal, and held in cus-
tody under both warrants during the whole time of his imprison-
ment. (*Doherty* v. *Munson*, 127 Mass. 495.) And it has also been
held, in a case of detention for non-payment of taxes partly illegal,
that it is not to be presumed that the plaintiff was detained until
the unlawful excess was paid ; being rightfully held for part, the
detention was justifiable. (*Meserve* v. *Folsom*, 62 Vt. 504.)

I think that this plaintiff was properly arrested for the commission of the offense of carrying concealed weapons; that that arrest was not illegal, and that his detention under the circumstances was not illegal, and that the complaint should have been dismissed.

VAN BRUNT, P. J., concurred.

Judgment affirmed, with costs.