COURT OF APPEALS,

Jan. 19, 1915.

# THE PEOPLE v. GUISEPPE MARENDI.

(213 N. Y. 600.)

(1.) MURDER—HOMICIDE COMMITTED BY DEFENDANT WHEN ESCAPING FROM DETENTION BY POLICE OFFICER.

To justify a conviction of murder in the first degree for an unintentional homicide on the ground that it was committed while the defendant was actually engaged in the commission of a felony, every essential element of the latter crime must be established by evidence, and every fact essential to constitute the crime charged, though not disputed, must be submitted to the jury.

(2.) SAME—ARREST WITHOUT WARRANT—WHERE DETENTION FOR PURPOSE OF SEARCHING FOR CONCEALED WEAPONS DOES NOT CONSTITUTE AN ARREST FOR CRIME.

An officer may be justified in arresting a person for the felony of carrying concealed weapons, or of having a dangerous weapon in his possession, not being a citizen (Penal Law, § 1897; Code Crim. Pro. § 177, subd. 2), but in making an arrest without a warrant it is his duty to inform the person arrested of his authority and the cause of the arrest "except when the person arrested is in the actual commisson of a crime, or is pursued immediately after an escape." (Code Crim. Pro. § 180.) And where a police officer, without giving such information, merely detained the person temporarily for the purpose of searching him, presumably to ascertain whether he had a weapon upon his person, such detention did not constitute an arrest for a crime within the meaning of the statute. (Code Crim. Pro. § 167.)

(3.) SAME—EVIDENCE NECESSARY TO CONVICT OF MURDER IN FIRST DEGREE FOR UNINTENTIONAL HOMICIDE.

Where it was charged that the defendant fired a shot which caused the death of a citizen who was in the way of his flight it was error for the court to charge that the jury might convict the

defendant of the crime of murder in the first degree if they found that he was under arrest or under lawful restraint, and that, when escaping from such lawful custody, he fired the shot at decedent though without a design to effect the latter's death. The evidence did not justify the submission of the case to the jury under subdivision 2 of section 1044 of the Penal Law, and in any event the charge left out of consideration two important and essential elements: (1) That the arrest must have been for a felony, and (2) that the shot must have been fired by defendant in the act and for the purpose of effecting his escape.

(4.) SAME—EVIDENCE IMPROPERLY ADMITTED OF DYING PERSON'S STATEMENTS.

The admission in evidence of testimony that the deceased immediately after the shooting pointed to the defendant, who mumbled something unintelligible to the witness, and of transcripts of notes of examinations of the defendant made at the hospital in the presence of the deceased, was erroneous, there being no pretense that they were dying declarations nor any basis upon which defendant's words and statements could be construed as admissions.

(5.) SAME—ERROR IN RECEIVING A RECORD OF VERDICT ON PREVIOUS TRIAL WHERE JURY HAD FOUND DEFENDANT GUILTY OF MANSLAUGHTER BUT NO JUDGMENT ENTERED ON VERDICT.

The defendant had, previous to this trial, been tried for the homicide of the policeman who had attempted to detain him and the jury had found him guilty of manslaughter in the first degree, but no judgment had been rendered on that verdict. It was, therefore, error to receive the record of the verdict for the purpose of impeachment, since a verdict alone is not sufficient evidence of conviction; there must be a judgment. (Blaufus v. People, 69 N. Y. 107; People v. Fabian, 192 N. Y. 443, followed.) It was also error to allow comments made with reference thereto by the district attorney and to charge the jury that it could consider such previous conviction.

(6.) SAME—ERROR IN ADMITTING AFFIDAVIT PREJUDICIAL TO DEFENDANT.

An attempt by the prosecuting attorney to get before the jury an affidavit prejudicial to the defendant which was not evidence, held improper and its allowance by the trial court error.

(7.) SAME.

Where, as in this case, errors were committed highly prejudicial to defendant by improperly receiving evidence on a vital issue, and the jury was permitted to find the defendant guilty of murder in

the first degree on a theory which ought not to have been submitted to it, whereas they might reasonably have found a verdict in a lesser degree on the rightful theory, the judgment of conviction should not be affirmed.

APPEAL from a judgment of the County Court of Kings county rendered June 1, 1914, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*James C. Danzilo* for appellant.

It was improper to receive evidence of the killing of Officer Murtha. (People v. Wolter, 203 N. Y. 484; People v. Sullivan, 173 N. Y. 122.) The evidence is not sufficient to warrant a conviction of the crime of murder in the first degree. (People v. Fiorentino, 197 N. Y. 560; People v. Conroy, 97 N. Y. 62; People v. Raffo, 180 N. Y. 434; People v. Leighton, 10 Abb. [N. C.] 261; 88 N. Y. 117.) The court erred in permitting damaging incompetent evidence against the defendant on his cross-examination as to a previous accusation of assault against him. (People v. Cascone, 185 N. Y. 317.) The court improperly admitted evidence in regard to declarations and actions on the part of James O'Connell when he was in a semi-conscious condition in O'Neill's saloon. (People v. Falletto, 202 N. Y. 494; People v. Madas, 201 N. Y. 349.) The charge of the trial court as a whole was highly prejudicial to the defendant and strongly indicated the court's own belief in the defendant's guilt. (People v. Walker, 198 N. Y. 329; People v. Tuczkewitz, 149 N. Y. 240; People v. Upton, 38 Hun, 107; Duffy v. People, 26 N. Y. 588; McKenna v. People, 81 N. Y. 360; Howell v. People, 5 Hun, 620; 69 N. Y. 607; Commonwealth v. Anthes, 5 Gray, 185; Pennsylvania Co. v. Verster, 15 L. R. A. 798.) It was improper for the court to charge the jury that this defendant committed the crime while in the com-

mission of a felony. (Penal Law, § 1044, subd. 2; People v. Wolter, 203 N. Y. 404; People v. Hüter, 184 N. Y. 238; Buel v. People, 78 N. Y. 492; Fox. v. People, 80 N. Y. 500; People v. Franklin, 174 N. Y. 356; People v. Johnson, 110 N. Y. 135; People v. Spohr, 206 N. Y. 516.)

James C. Cropsey, District Attorney (Ralph E. Hemstreet and Hersey Egginton of counsel), for respondent.

All of the elements of murder in the first degree as defined in subdivision 1 of section 1044 of the Penal Law were proved by the prosecution beyond a reasonable doubt. The appellant shot and killed James O'Connell with a deliberate and premeditated design to effect his death. (People v. Hüter, 184 N. Y. 237; People v. Sullivan, 173 N. Y. 122; People v. Patini, 208 N. Y. 176; People v. Fiorentino, 197 N. Y. 560; People v. Barberi, 149 N. Y. 25; People v. Conroy, 97 N. Y. 62; People v. Raffo 180 N. Y. 434; People v. Majone, 91 N. Y. 211; People v. Hawkins, 109 N. Y. 408; People v. Johnson, 139 N. Y. 358; People v. Constantino, 153 N. Y. 24; People v. Serimarco, 202 N. Y. 225.) All of the elements of murder in the first degree as defined in the second part of subdivision 2 of section 1044 of the Penal Law were proved by the prosecution beyond a reasonable doubt. The appellant, while engaged in the commission of a felony, shot and killed James O'Connell. (People v. Sullivan, 173 N. Y. 122; People v. Patini, 208 N. Y. 176.) No errors are to be found in the charge. The charge was fair to the defendant. Any errors to be found therein were against the interest of the prosecution and in favor of the appellant. (State v. Ross, 72 Tenn. 442; State v. Ellen, 65 Ind. 282; People v. Hüter, 184 N. Y. 237; Sindram v. People, 88 N. Y. 196; People v. Constantino, 153 N. Y. 24; People v. Patini, 208 N. Y. 176; People v. Giblin, 115 N. Y. 196; Dolan v. People, 6 Hun, 493; 64 N. Y. 485; People v. Conroy, 97 N. Y. 52.) The proof of the killing of Officer Murtha was properly admitted to show: *First*, motive for the shooting of O'Connell; and *second*, to

show the unlawful escape of the appellant by force from the lawful custody of a police officer. (People v. Sullivan, 173 N. Y. 122; People v. Conroy, 97 N. Y. 62; People v. Willett, 102 N. Y. 251; People v. Giblin, 115 N. Y. 196; People v. Flanigan, 174 N. Y. 356; People v. Wolter, 203 N. Y. 484.) The defendant, by taking the stand as a witness and by offering evidence of good character, made relevant the testimony introduced by the prosecution in rebuttal, not only to impeach the credibility of the defendant as a witness, but also to impeach his character as defendant. (People v. Hinksman, 192 N. Y. 421; People v. Webster, 139 N. Y. 73; People v. Cascone, 185 N. Y. 317; People v. Van Gaasbeck, 189 N. Y. 408.)

MILLER, J.:

On the evening of February 5, 1914, James O'Connell was shot, while peaceably walking along Hoyt street in the borough of Brooklyn. He died from the effects of the wound on February 14, 1914. For that homicide the defendant upon sufficient evidence has been convicted of murder in the first degree. I shall review the evidence only as it bears on the law points presented by the record.

The theory of the People was that shortly before the shooting of O'Connell the defendant had shot Edward Murtha, a police officer, who was searching him for concealed weapons; that O'Connell got in the way of his flight from the scene of that crime, and that to effect his escape he shot O'Connell with the deliberate and premeditated design to kill. The defendant was in company with a fellow-native of Italy, Tony Scaltifalso, when Officer Murtha overtook and started to search them. He first searched Scaltifalso and then proceeded to search the defendant when a scuffle ensued, and he called upon two civilians to assist him. He and one of them held the defendant's hands and the other started to feel of the defendant's clothing, when a pistol was discharged, the officer fell mortally wounded and

the defendant and Scaltifalso, who meanwhile had been standing a few feet away, started to run. No one saw a pistol in the defendant's hand at that time, and, as far as appears, neither the officer nor the civilian had discovered one on the person.

The theory of the defense was that Scaltifalso fired the shots that killed both Officer Murtha and O'Connell, that a crowd collected in pursuit of the fugitives, that in their flight after the shooting of O'Connell, Scaltifalso handed the pistol to the defendant, saying, " Here, take this revolver and defend yourself. I will be able to defend myself. I am a larger man than yourself; " that the defendant being frightened took the pistol, and in his flight fired two shots in the air, and when about to be apprehended dropped the pistol. Scaltifalso succeeded in making good his escape.

The trial court submitted the case under both subdivisions 1 and 2 of section 1044 of the Penal Law, and in respect to the latter subdivision, said: " So that if you should find that this defendant was under arrest or under lawful restraint by Officer Murtha, and that afterwards he was escaping from lawful custody, and that then and under those circumstances he fired the shot at O'Connell, which shot ultimately killed O'Connell, and that he did this without a design to effect the death of O'Connell, but under the conditions that I have given you, and the circumstances set before you, your verdict could be that of guilty of murder in the first degree." The defendant specifically excepted to the submission under subdivision 2. As far as material, that subdivision provides: " The killing of a human being, unless it is excusable or justifiable, is murder in the first degree, when committed:   *   *   *   without a design to effect death, by a person engaged in the commission of, or in an attempt to commit a felony, either upon or affecting the person killed or otherwise." The court charged, at the defendant's request, " That unless they find that this defendant committed

this act after deliberation and premeditation, that they cannot find him guilty of murder in the first degree," saying, " I have already charged it ; " and later, " that any felony which had been perpetrated previous to the commission of the shooting of O'Connell, whether by this defendant or by another, had been consummated, and was at an end," and " that the carrying of a dangerous weapon, if the jury believes that this defendant shot O'Connell, and the fact that he had a dangerous weapon, was merged in the larger crime, that is, the shooting, and cannot be considered as a felony which he was in the act of committing while the shooting was done, if he did shoot O'Connell," and in that connection added, " but I will also say that the jury may still keep in mind what I have already charged, regarding the effect of the previous crime, if it was a crime, and if it was committed by this defendant, as regards his subsequent conduct when he passed into Hoyt street, and as to what he did then. I charge as requested." While possibly the jury may have been confused, they could not have understood that the court had withdrawn from their consideration anything submitted to them in the main charge.

In my opinion the evidence did not justify the submission of the case to the jury under said subdivision 2, and even if it did, the jury were not correctly instructed on the point.

Plainly the defendant was not engaged in the commission of, or attempt to commit, a crime upon Officer Murtha when O'Connell was shot. The prior crime was completed, and the assault upon O'Connell was merged in the greater crime. (People v. Hüter, 184 N. Y. 237, 2 N. Y. Crim. 448; People v. Spohr, 206 N. Y. 516.) Nor was the crime of carrying a dangerous weapon one, in the commission of which the defendant was engaged, within the meaning of the statute. Indeed, those crimes were eliminated by the charge of the court and need not be further discussed.

The court intended to submit to the jury the question

whether the defendant was engaged in the commission of the felony of escaping from the lawful custody of an officer upon a charge or arrest for a felony in violation of section 1694 of the Penal Law, which provides: " A prisoner who, being confined in a prison, or being in lawful custody of an officer or other person, by force or fraud escapes from such prison or custody, is guilty of felony if such custody or confinement is upon a charge, arrest, commitment, or conviction for a felony; and of a misdemeanor if such custody or·confinement is upon a charge, arrest, commitment or conviction for a misdemeanor." Assuming that the defendant fired the fatal shot at Officer Murtha, the truth undoubtedly is that the shooting of O'Connell, if done by the defendant, was to escape the consequences of the earlier completed crime. On that theory the jury might very well have found that the defendant formed the deliberate and premeditated design to shoot any one who got in the way of his escape; but that did not justify the submission of the case to the jury so as to permit a conviction of murder in the first degree for an unintentional homicide, committed without such a design.

It may be assumed that the defendant was guilty of the felony of carrying concealed weapons, indeed, not being a citizen, of the felony of having a dangerous weapon in his possession. (Penal Law, section 1897.) The People produced a witness who heard and saw all that was said and done immediately preceding the shooting of Officer Murtha. It plainly appeared from his testimony that the officer was engaged in searching Italians. Just before overtaking the defendant and Scaltifalso, he had stopped an Italian, searched him, and not finding anything had told him to go back. He had searched Scaltifalso and again not finding anything· had told him " to get out of there." He started to search the defendant when a scuffle ensued and he called upon the said witness " to break his [the defendant's] hold." The witness describes a scuffle, participated in by the three. The officer then called to his assistance a

fourth man, who started to feel of defendant's clothing while both his hands were held by the other two, and during the scuffle a pistol, which no one saw, was discharged in some unexplained manner, whether intentionally, assuming it to to have been in the defendant's possession, or accidentally in the struggle, is largely a matter of conjecture. It was thus affirmatively established that the officer, without informing the defendant of the cause of his arrest or detention, or even that he was under arrest, had merely detained him temporarily for the purpose of searching him, presumably to ascertain whether he had a weapon upon his person. We may presume that in the discharge of his duty the officer would have arrested the defendant for a felony if the search had continued until a pistol was discovered, but it is a mere guess, and one too opposed to the only reasonable inference from the facts proved, to say that he had in fact discovered the pistol or had determined to arrest the defendant for carrying it.

" Arrest is the taking of a person into custody that he may be held to answer for a crime." (Code of Criminal Procedure, section 167.) The defendant was not taken into custody by Officer Murtha " that he might be held to answer for a crime," but only that he might be searched. In case of an arrest under a warrant " the defendant must be informed by the officer that he acts under the authority of the warrant, and he must also show the warrant, if required." (Code of Criminal Procedure, section 173.) The warrant must state the crime charged. (See Code of Criminal Procedure, sections 151 and 301.) In Howard v. Gosset (10 Q. B. [Ad. & El. N. S.] 359), a thoroughly considered case, Lord COLERIDGE stated the reason for the requirement that the warrant should disclose the cause of the arrest as follows: " Several reasons are given; not the least important is, that the party called upon to submit to the process of the law may know what it is that is charged against him, and for what it is that he is called upon to yield himself a

prisoner. If no cause, or an insufficient cause, appear, he takes his measures accordingly at the time; and he must judge from the information communicated at the time. Should he resist, and kill or injure the officer in his resistance, and be brought to trial, it could not be contended that any fact could be added to the statement in the warrant to his prejudice. The act with which he is charged must take its character from the circumstances as they then stood. He was resisting a wrongful imprisonment, wrongful because the officer was not armed with a legal authority for arresting him; and that is the act for which he is to answer. This reasoning equally applies, if he submits and brings his action for damages. Whatever cause for imprisoning him may have existed, the action lies, because the imprisonment of which he complains was unauthorized and wrongful. As well might a new warrant be subsequently granted to the officer, and relied on by him as a defense, as facts be added in the plea to help out the defective warrant. These facts can only show that he might have been well arrested, not that he was, which is the question at issue." Lord DENMAN's judgment is equally strong on the point. The judgment in that case appears to have been reversed by the Court of Exchequer Chamber, but only on the ground that the warrant had been issued by the speaker of the House of Commons under the authority of that body, and not at all in disapproval of the reasoning to which I have called attention. So much for an arrest under a warrant.

The officer would undoubtedly have been justified in arresting the defendant for the felony of carrying concealed weapons, or of having a dangerous weapon in his possession (Code of Criminal Procedure, section 177, subdivision 2), but in making the arrest without a warrant it was his duty to inform the defendant of his authority and the cause of the arrest, " except when the person arrested is in the actual commission of a crime, or is pursued immediately after an escape." (Code of Criminal

Procedure, section 180.) The reason of the requirement that a person arrested without a warrant be informed of the cause of the arrest is precisely the same as that for informing him, in case the officer has a warrant, that the arrest is under the authority of a warrant, and for exhibiting the warrant, if required, namely, to acquaint the person arrested of the cause of the arrest, not only that he may know whether he is bound to submit, but also that he may know what measures to take to regain his liberty. Whilst no case precisely like this has been found, Snead v. Bonnoil (49 App. Div. 330, 333; 166 N. Y. 325) is somewhat analogous, and the following language of Mr. Justice BARRETT in the Appellate Division is precisely apposite: " The statute requires the officer to inform the arrested person of his authority and the cause of the arrest, except when the person arrested is in the actual commission of a crime. (Code Crim. Proc. § 180.) The latter exception relates to an open and visible crime, or to one brought to light at the time of the arrest. Where there is no overt act of criminality, or visible offense committed in the immediate presence of the officer, he must inform the arrested person of the cause of the arrest. He cannot arrest a man for one cause and, when that is exploded, justify for another. Such a doctrine would be an incentive to the loosest practices on the part of police officers and a dangerous extension of their sufficiently great powers. They cannot be too firmly told that there is no such lawful thing as an arrest without an apparent or disclosed cause, to be justified thereafter by whatever may turn up. If the arrest here had been upon a void warrant, the defendant's position with regard to the misdemeanor would have been substantially the same as it now is. He could with equal propriety have said, ' I arrested the plaintiff on the warrant for the felony. I did not arrest him without a warrant for the misdemeanor committed in my presence. Had I known, however, that he was carrying a pistol, I might have arrested him therefor.' The plain answer

would be, 'But you did not do it. You cannot arrest a man merely because, *if all were known, he would be arrestable.* You arrest him for some specified cause, and you must justify for that cause.' " Whilst that language was not expressly approved by the Court of Appeals, the point that an unauthorized arrest could not be justified by the fact that there was cause for arrest, though not known, was distinctly passed upon. Judge GRAY said: " The fact, however, that at the time of the arrest the plaintiff may have been, although unknown to the defendant, guilty of a misdemeanor is no justification for the trespass, as it is contended," and further, " The procedure in this case was without warrant in the law. It would not do to hold that the illegality of a person's arrest upon an unfounded charge could be cured by the subsequent charge and conviction for another offence." (pp. 328, 329.)

The People assert that in the statements, which I shall consider later, the defendant admitted that he was under arrest. It is to say the least, doubtful, whether those statements referred to the alleged arrest by Officer Murtha or to the subsequent arrest after the shooting of O'Connell. The point is unimportant because, although there was an arrest in the sense of a detention, the People's evidence unmistably shows that the defendant was not taken into custody that he might be held to answer for a felony or for any crime, and indeed that the officer, himself, never reached the point of determining whether to arrest the defendant in that sense. To justify a conviction of murder in the first degree for an unintentional homicide on the ground that it was committed while the defendant was actually engaged in the commission of a felony, every essential element of the latter crime must be established by evidence, not left to be guessed at.

Moreover, the charge of the court left it to the jury to convict the defendant of the crime of murder in the first degree if they found that the defendant was under arrest or under law-

ful restraint by Officer Murtha, and that afterwards he was escaping from lawful custody and fired the shot at O'Connell, though without a design to effect the latter's death. That charge left entirely out of consideration two very important and essential elements: (1) That the arrest must have been for a felony, and (2) that the shot at O'Connell must have been fired by the defendant in the act and for the purpose of effecting his escape. The elimination of the first element was especially harmful in view of the fact that the court had already charged the jury that, " It was within his [Murtha's] right to stop and search the defendant if he felt that the circumstances warranted it," which of course is not the law. The charge was perhaps consistent with the submission of the case to the jury at all, on that branch of it. The evidence disclosed merely that Officer Murtha had stopped the defendant to search him. Under the charge, if the jury found that undisputed fact and the admitted fact that the defendant escaped, together with a single other fact, namely, that the defendant shot O'Connell, though without a design to effect the latter's death, they were at liberty to convict him, as they did, of murder in the first degree. The jury might have found sufficient reason in the evidence to refuse to find that the defendant shot O'Connell from a deliberate and premeditated design to effect the latter's death, but if they found against him on a single disputed fact, namely, that he fired the fatal shot, they were virtually required by the charge to convict him of murder in the first degree.

A number of people appear to have pursued the defendant. Apparently only one could be found who was willing to testify that he saw the defendant fire the fatal shot at O'Connell. The testimony of that witness, while positive on the point, was not altogether satisfactory and a jury might have hesitated to accept it without corroboration. After he was shot O'Connell was taken to a nearby saloon, and upon his arrest the defendant was taken there in the custody of three police officers. The

People were permitted to prove over the defendant's objection that O'Connell said something and pointed to the defendant, and that the defendant " mumbled and bit his teeth together," that " he sort of mumbled something in Italian." There was no interpreter present and no one pretended to be able to understand what the defendant said. Of course, the sole purpose of the evidence was to get before the jury the fact that O'Connell pointed to the defendant as the man who had shot him. There is no pretense that O'Connell's act was in the nature of a dying declaration, and it requires no argument to show that it was a seriously prejudicial error to admit proof of that act, as an independent fact. Not being a dying declaration, it was admissible only in connection with some act, declaration or response of the defendant in the nature of an admission. The defendant made a response in his own language, which no one present could interpret. Even if he had stood mute his silence could not have been construed as an admission, because he was then under arrest and not called upon to speak or deny an accusation. (People v. Smith, 172 N. Y. 210, at page 234, 17 N. Y. Crim. 39; Commonwealth v. McDermott, 123 Mass. 440.) That error was intensified when the People came to the rebuttal.

The day after the homicide the defendant was taken to the Butler Street station and there questioned by an assistant district attorney through an interpreter, from there he was taken to the bedside of O'Connell in the Holy Family Hospital and again examined, questions being put to O'Connell whose answers were interpreted to the defendant, from there the defendant was taken to the morgue and by the side of Murtha's body was again subjected to an examination. Transcripts of the stenographer's notes of those three examinations were produced and over the defendant's objection were admitted in evidence. The alleged purpose of that evidence was to show admissions and contradictory statements to the testimony given by the de-

fendant on- the trial. It may be that some of the statements
did slightly tend to contradict the defendant's testimony res-
pecting his possession of the revolver and his acquaintance with
Scaltifalso. Those contradictions or admissions were at the
most of very minor importance and they are to be found for
the most part, if not altogether, in the statements made at the
police station and again at the morgue. The statement made
at the bedside of O'Connell was obviously introduced for a
wholly different and an improper purpose.

It will only be necessary to quote sufficient of that statement
to show its import:

By Mr. Mealli (the interpreter) to prisoner (the defend-
ant).

" Q. This man [O'Connell] lying here now before you says.
that you are the man who shot him. What have you got to
say about it?

" A. I did not see him.

" Q. He says that he saw you running toward him with a
gun in your right hand, and that you shot at him and shot him
and he fell down. What you got to say about that?

" A. No, I didn't shoot him. I didn't see him."

It hardly seems necessary to discuss the proposition that evi-
dence cannot be manufactured in that way. The statements
quoted, and there was much more of like import, were not ad-
missible to prove admissions, because the defendant made none.
Instead, he unequivocally denied the accusation. The only
effect of the evidence and the manifest purpose in offering it was
to get O'Connell's statements before the jury. Those state-
ments were not dying declarations and it is not pretended
that they were. They were not entitled to any probative
value, but being admitted by the court would naturallly be
given great weight by the jury. If there be anything in
the entire statement either contradictory of the defend-
ant's. testimony or in the nature of an admission, which

we have overlooked, it should have beeen singled out. It was not a case in which the court could not anticipate the answer of a witness. The proof was by written document. The rule excluding hearsay testimony was thus flagrantly violated on the crucial point in the case. Whilst it may seem at times that evidence of great probative value is excluded by some technical rule, the wisdom of the hearsay rule has been proven by experience both in common-law jurisdictions in whose jurisprudence it is firmly fixed, and on the continent of Europe where it does not prevail. Both injustice and failure of justice are likely to result from its non-observance.

The defendant had, previously to this trial, been tried for the homicide of Murtha and the jury had found him guilty of manslaughter in the first degree, but no judgment had been rendered on that verdict. I now quote from the record of the district attorney's closing address to the jury:

" You are dealing with a case where there is not any question raised about the accidental discharge of a revolver and a struggle for its possession, there is nothing of that kind in this case. That has all been settled. The jury in the other case, that was properly tried first, because it lays the foundation for the trial of this case, has decided that he, this defendant, is the the man who was criminally responsible for the slaughter of Officer Murtha that night, and having settled that, having laid the foundation for that, then you are in a position to go on and try the case against him where this other citizen was shot while he was walking along the street about his own private affairs, and that is the reason these cases were tried in this order, because if the jury in the other case thought that Tony Scaltifalso killed this police officer, that exonerates the defendant. That is not the case now.

" Defendant's Counsel: I object to the District Attorney stating what the jury thought. They simply found this man guilty of manslaughter in the first degree. They have not told

anybody what they thought about the details of the case, and I object to this statement of what the jury thought.

" District Attorney: I presume it is not improper to say that if the jury had found that Tony Scaltifalso had fired the shot they would have had to acquit the defendant.

" The Court: That would be proper.

" District Attorney: I presume so.

" Defendant's Counsel: I take an exception to the District Attorney's statement on that line, which I have indicated."

Of course, there should have been no reference whatever on this trial to a verdict of a jury in some other trial not followed by a judgment. The mere verdict of a jury, which may be set aside and never result in judgment, is not even evidence, much less an adjudication. The first reference to the verdict of the other jury, which I find in the record, was by the district attorney in putting this question to the defendant on cross-examination:

" Q. You were convicted of killing Officer Murtha, weren't you, on a previous trial in this court? "

An objection was overruled and the defendant answered: " I don't know whether they condemned me or found me guilty or not." In rebuttal, evidently as impeaching evidence, the district attorney proved by the clerk the record of the jury's verdict, whereas a judgment was necessary to constitute such evidence (Blaufus v. People, 69 N. Y. 107 ; People v. Fabian, 192 N. Y. 443, 22 Crim. 460) ; and the court charged at the request of the district attorney that in weighing the defendant's testimony they could consider the fact that he had been previously convicted, to which an exception was taken. The jury would naturally understand from the summing up quoted that the finding of the other jury was conclusive, especially as the district attorney's observations, when objected to, were characterized by the court as proper. In truth, they were highly improper and prejudicial and concerning a matter which

should not have been brought before the jury at all, much less treated as conclusive.

I have discussed the errors, which I consider of major importance. There were many others. To illustrate, I quote from the record the entire cross-examination of one of the defendant's character witnesses:

" Q. Did you ever hear that a man by the name of Joe Masso, on the 6th of August, 1913, appeared before Justice of the Peace William Leister in Glen Cove, and swore (obviously the examiner was reading from a paper) ' that on August 6th, 1913, at about 6: 30 P. M., I was on my way to a barber shop when I heard some sort of a muss down the street '—

" Defendant's Counsel: I object to all that unless he finds out whether this witness knows anything at all about Masso. I believe it is prejudicial to read something in the record before this jury before finding out whether this man knows anything at all about the individual concerned.

" District Attorney: I presume it is the properʏprovince of cross-examination to cross-examine the witness regarding any complaint.

" Defendant's Counsel: I submit it is absolutely wrong to read a document without first finding out whether this man knows anything at all about the individuals concerned.

" The Court: I will allow it.

" Defendant's Counsel: I take an exception.

" Q. ' And one Guiseppe Marendi passed from that direction and pushed me, and I told him to be careful, as I was not bothering him. I went on and got a shave and when I came out the man I knew to be Guiseppe Marendi, who had pushed me, together with Grazio Pugliese, both attacked me and inflicted painful injuries.' Did you ever hear that?

" A. No.

" Q. Did you ever hear that the justice of the peace on the

complaint of Joe Masso issued a warrant for the arrest of this defendant in Glen Cove?

"Defendant's Counsel: I object to the question.

"The Court: He said he never heard it.

"Defendant's Counsel: That is all."

The district attorney was plainly attempting by subterfuge to get before the jury an affidavit highly prejudicial to the defendant which he knew was not evidence. The attempt was grossly improper, and the court should not have allowed it to succeed.

In charging the jury on the *corpus delicti*, the court said: "That is the direct proof, perhaps as clear and satisfactory as you could desire, and in fact I take it that there is no contention raised by the defense upon that point, so that the death of O'Connell may be almost eliminated as regards the proof. It is a fixed fact." That error was technical, because the death of O'Connell was virtually conceded, and no request was made to submit the question to the jury. I allude to it here because of other instances which have come to our notice, in which trial judges, failing to distinguish between civil and criminal trials, have overlooked the rule that in a criminal case every fact essential to constitute the crime charged though not disputed must be submitted to the jury. (People v. Walker, 198 N. Y. 329, 24 N. Y. Crim. 433.)

The two errors just referred to are but typical of others, which standing alone or even collectively, might be regarded as technical and insufficient to require a reversal. We are required to give judgment "without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties." (Code Criminal Procedure, section 542.) The records in this court upon which judgments of conviction have been affirmed attest the liberality with which that section has been applied, and many which have come before us of late suggest the possibility at least that that liberality is leading to

abuses on the part of prosecuting officers and carelessness on
the part of trial courts. We frequently hear it said that a
particular matter complained of did not affect the result, when
it is patent that it was introduced in the belief that it might im-
properly influence the result. Our disregard of such errors
seems to be taken as authority for their repetition and ex-
tension in other cases.

What are technical errors not affecting the substantial rights
of the parties? It would require some boldness to hazard an
all-inclusive definition, and I shall confine myself to exclusion.
The errors which I have referred to as of major importance can
be said to be technical on only one possible theory, namely,
that the jury properly decided the case. Are we then to dis-
regard errors no matter how substantial, if upon a review of
the evidence we are satisfied with the verdict of the jury? Such
a course will simply mean in the long run the abolishing of all
forms of law taught by experience to be necessary to the pro-
tection of the innocent and the decision of criminal cases on
appeal solely on the facts. If trial by jury is to be maintained,
the right of every accused person to be tried in accordance with
established forms of law must be respected. If the errors in
question had related to matters upon which but one decision,
and that adverse to the defendant, could reasonably have been
reached, it might be permissible to overlook them; but where
prejudicial matter is erroneously received in evidence on a dis-
puted question of fact, its harmful character cannot be deter-
mined solely by the mere weight of competent evidence unless
we are to resolve ourselves into a jury and, ignoring the finding
upon incompetent evidence, substitute one upon the evidence
which we may deem competent.

In this case highly prejudicial matter was received in evi-
dence on a vital issue in utter disregard of a fundamental rule
of evidence firmly established in our jurisprudence, and the
jury were permitted to find the defendant guilty of murder in

the first degree on a theory which ought not to have been submitted to them, whereas they might reasonably have found a verdict in a lesser degree on the rightful theory. Under those circumstances we cannot affirm without establishing the rule that the forms of law need not be respected if the evidence convinces us of the defendant's guilt. We are not prepared to establish such a rule.

The judgment of conviction should be reversed and a new trial ordered.

CUDDEBACK, J. (dissenting):

I dissent and I will express my views briefly on the several objections to the judgment appealed from, mentioned in the prevailing opinion.

1. The first objection is that there was no evidence that the defendant had been arrested by Officer Murtha on the charge of committing a felony, and hence the defendant could not be convicted of murder in the first degree, on the ground that when he killed O'Connell he was attempting to escape from lawful custody after being arrested for a felony.

The court in its charge submitted to the jury the question of fact whether Officer Murtha had actually arrested the defendant, and defined what constitutes an arrest, and the power of police officers to arrest without warrant, in the language of the Code of Criminal Procedure.

The jury by its verdict answered the question in the affirmative, and there was, in my opinion, sufficient evidence to justify the verdict. The defendant testified on the trial that after Murtha had searched his pockets, he, the defendant, made two or three steps away and that Murtha said, " Hey, come here." The defendant came back and Murtha took him by the arm and never loosened his hold until he was shot. The evidence also showed that on the day following the killing the defendant was examined by an assistant district attorney, and the following

are some of the questions put to him, and the answers which he gave:

" Q.  You say the policeman grabbed hold of you and then what happened?   A.   After he searched all my pockets, then he grabbed me by the arms.

" Q.   Then what happened?   A.   *He wanted to bring me with him,* and then I heard some shots.

" Q.   You knew he was a policeman?   A.   Of course I knew he was a policeman.   He was in uniform."

The jury could have found that the defendant, who is not a citizen of the United States, was actually carrying a concealed revolver and, therefore, guilty of a felony; that Murtha, who was a police officer in uniform, grabbed the defendant and searched him; and that thereafter when the defendant attempted to depart, the officer seized and detained him.   Murtha is dead and we have not the benefit of his version of the affair, but from the fact that he called the defendant back and placed him under restraint when the latter stepped away, the jury would have been justified in finding that the officer had arrested the defendant for carrying the weapon.

The fact that the defendant was actually committing the felony at the time made it unnecessary under section 180 of the Code of Criminal Procedure for the officer to notify him of the cause of arrest.

2.   The second ground of objection is that the charge to the jury omitted two essential elements necessary to make out a case of murder in the first degree, upon the theory adopted by the court, the omissions being the failure of the court to charge (a) that the arrest must have been upon a charge of felony; and (b) that the shot must have been fired at O'Connell by the defendant to effect his escape.   The charge was in this language: " So that if you should find that this defendant was under arrest or under lawful restraint by Officer Murtha, and that afterwards he was escaping from lawful custody, and that then and

*under those circumstances* he fired the shot at O'Connell, which shot ultimately killed O'Connell, and that he did this without a design to effect the death of O'Connell *but under the conditions that I have given you and the circumstances set forth before you,* your verdict could be that of guilty of murder in the first degree." The words italicized and emphasized in the foregoing quotation incorporate in the charge all the facts that the jury might have found were established on the trial, including the ground upon which the defendant had been arrested, and the motive with which he shot O'Connell.

3. The third ground of objection is that certain testimony was improperly admitted, showing what was said at an examination of the defendant by the assistant district attorney on the day following the shooting, at the hospital where O'Connell, the wounded man, was lying in bed. In the course of the examination the defendant was questioned and answered as follows:

" Q. This man lying here now before you, says that you are the man who shot him. What have you got to say about it? A. I did not see him.

" Q. He says that he saw you running toward him with a gun in your right hand and that you shot at him and shot him and he fell down. What you got to say about that? A. No, I didn't shoot him—I didn't see him."

These questions and answers were only a part of the examination, and it may be said in passing they were not specifically pointed out as objectionable—the objection made by defendant's counsel being to the whole of the examination.

On the trial of the action the defendant testified that another Italian named Tony had shot Officer Murtha and that he and Tony ran away together and in their flight Tony passed the revolver to the defendant. The defendant says he was in a very nervous condition, and that in his excitement he fired the revol-

ver in the air, and after going along for some time fired it a second time in the air.

He was asked on cross-examination as to what he had said at the hospital by O'Connell's bedside, and whether he had not in his statement there told a story different from his testimony on the trial. His reply was that he did not speak at O'Connell's bedside; that he did not know what was going on.

Then, in rebuttal, witnesses were called to testify as to what was said at the hospital, and their testimony tended to contradict what the defendant swore to on the trial. On the trial the defendant said he had a revolver and fired it twice in the air; at the previous examination he declared repeatedly that he did not do any shooting and that he had no revolver. Saying also: "How could I shoot him—with my hands? I had nothing * * *. Why should I shoot them for? What benefit would it be to me? I did not know the persons. Why should I shoot them for?" And much more to the same effect.

It was under these circumstances that the testimony of which the defendant now complains got into the case. I think the testimony was proper to contradict what the defendant swore to upon the trial, and was not rendered improper by the fact that incidentally it showed that the deceased, O'Connell, had identified the defendant as his assailant.

The examination was taken after the defendant had been warned of his rights and that what he said would be used against him. What was said was clearly and amply proved by the witnesses, so that, if proper at all, the evidence is not objectionable on any ground of informality in its reception.

4. The fourth ground of objection is to proof made by the assistant district attorney that the defendant had been tried about a month or two before the trial in this case on a charge of murder in the first degree for killing Officer Murtha, and had been convicted of manslaughter in the first degree. He had

not, however, been sentenced at the time of the trial under review.

No claim was made on the trial that it was improper to show the former conviction. On the contrary, the defendant's counsel seemed to welcome the proof and he sought to use it for his own purposes. At the conclusion of the evidence the counsel demanded that the defendant be brought to the bar and sentenced on his conviction of manslaughter in the first degree, adding that that was the defendant's right and prerogative. The point he sought to make, apparently, was that if the defendant was actually imprisoned upon the judgment following the former conviction he could not be punished under any judgment in this case until his term of imprisonment under the former judgment had expired.

Of course it was not proper to receive any proof as to the other trial and conviction, but under the circumstances the defendant's counsel was in a large degree responsible for it and no legal error is presented.

Objection is also made to the comment of the assistant district attorney, in his address to the jury, upon the former verdict. If the proof was in the case, it was not improper for him to make some comment thereon. What he said is quoted in the prevailing opinion and the only objection to his remarks was that he assumed to say " what the jury thought " on the former trial—the defendant's counsel contending that the assistant district attorney could not know what the jury thought. This objection may be disregarded as trivial.

5. The fifth objection is to the admission in evidence of certain testimony to the effect that an information had been laid before a justice of the peace charging the defendant with having assaulted another Italian. The witness of whom the questions were asked regarding the information had testified that the defendant's reputation was good; that he had never heard anything against the defendant's character, and did not know of

the defendant being in any fight. On cross-examination this witness was asked whether he had heard of the information laid before the justice of the peace as to the alleged assault, and that a warrant had been issued for the defendant's arrest. The witness testified that he had not heard of the matters inquired about, and that was all there was to the incident.

It is upon these several grounds of error which I have considered that a reversal of the judgment against the defendant is recommended. They are wholly insufficient to justify such a conclusion. I have no doubt of the defendant's guilt, and I believe the record is free from serious error.

The judgment appealed from should be affirmed.

WILLARD BARTLETT, Ch. J., HISCOCK and CARDOZO, JJ., concur with MILLER, J.; CUDDEBACK, J., reads dissenting opinion; COLLIN, J., votes for affirmance; WERNER, J., not voting.

Judgment of conviction reversed and new trial ordered.