THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* NORMAN W. DANIELS, Appellant, et al., Defendant.

Fourth Department, April 13, 1955.

*Charles J. McDonough* and *Paul W. Beltz* for appellant.

*John F. Dwyer, District Attorney (George H. Metz* of counsel), for respondent.

VAUGHAN, J. The defendant Norman Daniels appeals from a judgment of the Supreme Court, Erie County, convicting him of the crime of assault, third degree.

The appellant and his brother, James H. Daniels, were indicted in an eight-count indictment, all eight counts charging assault in the second degree. All charges arose out of a fight with three Buffalo police officers which occurred in the early morning of October 10, 1953.

Counts one, two and seven charged violation of subdivision 5 of section 242 of the Penal Law, viz., assault in the second degree " with intent  *  *  *  to prevent or resist  *  *  *  the lawful apprehension or detention of himself," by three police officers. Counts three, four, five, six and eight charged assault in the second degree in violation of subdivision 3 of section 242 viz., an assault which " Wilfully and wrongfully wounds or inflicts grievous bodily harm upon another, either with or without a weapon;" upon three police officers. The appellant Norman Daniels was named in counts one, two, three, seven and eight. Count three was dismissed by the trial court. Appellant was acquitted of the second count, which charged assault

on officer Hahn in resisting lawful arrest. He was also acquitted of assault in the second degree upon officer Rapp under the eighth count, which charged him with striking and kicking officer Rapp and inflicting grievous bodily harm upon him. Appellant was convicted of assault in the third degree under the first and seventh counts, which charged assault upon officers Moslow and Rapp in resisting lawful arrest.

These are the facts. It appears that the appellant and his brother James Daniels shortly after 3:30 A.M. of the morning of October 10, 1953, entered a restaurant located on the south side of Broadway just east of Michigan where they had sandwiches and coffee. The restaurant is open all night but does not sell alcoholic beverages. While defendants were in the restaurant, officers Moslow and Hahn, both in uniform, came into the restaurant and passed by the counter where the defendant and his brother were seated and entered the kitchen where, according to the officers, they each had a cup of coffee. The officers then left and shortly thereafter appellant and his brother came out of the restaurant. After leaving the restaurant the two officers walked to the southeast corner of Broadway and Michigan where they were standing when the appellant and his brother came out of the restaurant.

It is the story of officers Moslow and Hahn that while they were standing on the corner, an automobile stopped and a woman passenger in the car called out the window "Which direction to New York?" Officer Hahn stepped off the curb and out into the street and talked with the occupants of the car. It is the claim of officer Moslow that as the car pulled up or while it was standing James Daniels waved his hand at the woman in the car and said: "Hello, honey, that's my baby" or words to that effect. Moslow claims that he reprimanded James Daniels and told him to stop annoying persons. He further testified that following his reprimand of James Daniels, his brother Norman Daniels, the appellant herein, came over to him, placed his hands upon the officer's arm and said: "Don't lock my brother up." It is very evident what prompted the remark. Norman was concerned because his brother had been convicted of assault with a weapon while in the Army. Moslow claims that he told the defendant Norman Daniels that he had no intention of locking his brother up but that he should not annoy persons. Following that statement, appellant, according to Moslow's version, replied: "Well, why don't you lock us up? A couple of clowns aren't going to arrest us." Thereupon officer Moslow placed appellant under arrest by taking hold of

his arm and informing him that he was under arrest. The statement attributed to the defendant by the officer makes no sense in the face of the officer's prior statement that he had no intention of arresting appellant's brother.

About this time officer Hahn returned to where Moslow and appellant were engaged in conversation and he took appellant by the other arm and the two officers started to lead him away. It was at this point that the fight started, officer Moslow with appellant and officer Hahn with James Daniels.

Following the remark to the woman in the car attributed to defendant's brother, it is defendant's contention that the following occurred: '' Well, the officer approached me and asked me what did I say. I said, ' I haven't said nothing ', which one took me by the left sleeve and the other took me by the right arm and said, ' Well, you are under arrest.' Well, I said, ' What am I being placed under arrest for?' The officers answered ' You are just under arrest.' To which I said, ' I am a citizen. I mean, isn't there some reason. I would like to know why I am being placed under arrest.' At which one officer said, ' Oh, you are one of those smart niggers,' and with his night stick hit me across the head.'' Moslow followed this with a second blow to the head and defendant fell to the street.

It is conceded by officer Moslow that at no time did he inform appellant as to the reason for his arrest. At the trial, Moslow testified for the first time that he arrested appellant for drunk or disorderly conduct. No charges of drunkenness or disorderly conduct were ever placed against either Norman or his brother James. The testimony of Moslow upon the trial seems to be an afterthought. Absent from the record is any evidence of intoxication or of any act of disorderly conduct prior to appellant's arrest.

During the course of the fight between Moslow and the appellant, it appears that the officer not only used his night stick but after appellant had been knocked to the ground and while he was attempting to arise, the officer struck him over the head on at least two occasions, if not more, with his gun. When appellant regained his feet officer Moslow kept him covered with his gun until the arrival of other officers. Upon their arrival one of the officers, Koenig, leaped upon appellant from the rear, forced him to the ground and together with other officers assaulted and handcuffed him while he was on his back. Following that they assisted him across Broadway to a police car to take him to the station house. According to the police version, appellant was still resisting. Apparently appellant was pretty

well dazed by that time. He claims to have no recollection of being put into the car or resisting the officers in their attempt to put him into the car.

There can be no doubt that he sustained serious injuries of such a nature that he was confined to the hospital for a period of some eleven days.

Appellant urges that the judgment of conviction should be set aside and the indictment dismissed for the following reasons: (1) that under counts one and seven appellant was either guilty of assault in the second degree or guilty of nothing; (2) that the People failed to prove a lawful arrest, which is an essential element of the crime charged under counts one and seven; (3) that the court's charge contained reversible error and (4) that the verdict is against the weight of the evidence.

We think that discussion of points (1) and (2) is sufficient for disposition of this appeal.

Upon the record before us we quite agree with appellant's contention that the jury verdict was improper in that appellant was either guilty of assault as charged, or was guilty of nothing. In other words, if not guilty of assault, second degree, appellant could not on the facts be found guilty of assault, third degree. Stated another way, there is no lesser degree of the crime charged than assault, second degree. Both counts one and seven of the indictment were predicated upon an assault committed " with intent * * * to prevent or resist * * * the *lawful* apprehension or detention of himself, or of any other person ". (Penal Law, § 242, subd. 5.) (Emphasis supplied.)

Absent a showing of an attempted lawful arrest and resistance thereto, there could be no conviction under subdivision 5 of section 242.

The question immediately arises, " Can there be a conviction of assault, third degree? " Under the facts in this case, we think not. Section 244 of the Penal Law, relating to assault, third degree, covers a situation where a person commits an assault under circumstances not covered by subdivision 5 of section 242. The facts in the instant case disclose resistance exercised in an effort to prevent an *unlawful* arrest. It follows that appellant was not guilty of assault, second degree. By the same token, he was not guilty of assault in any degree; surely not of a lesser degree of an assault he did not commit. Resistance to an attempted unlawful arrest does not constitute an assault in any degree, absent a showing that more force was used than necessary to resist arrest. (See *People* v. *Cherry*, 307 N. Y. 308.)

As we have pointed out, the arresting officer in an attempt to support his claim for lawful arrest says for the first time upon this trial that he arrested appellant for being drunk and disorderly. Having arrested appellant for being drunk and disorderly, the officer must justify the arrest for that cause. He could not subsequently utilize some other cause to justify the arrest. However, the People attempted to justify defendant's arrest by charging him with assault, second degree, in resisting a lawful apprehension and detention by the police officers. That charge is unsupported by the evidence contained in this record.

The appellant was arrested without a warrant. Under such circumstances the arresting officer must inform him of the cause of his arrest, except where the person is in the actual commission of a crime, or is pursued immediately after an escape. The exceptions are not pertinent to this case. The appellant was not engaged in the commission of a crime nor was he an escaped person. (Code Crim. Pro., § 180; *People* v. *Marendi*, 213 N. Y. 600; see, also, *People* v. *Dority*, 282 App. Div. 995.)

There being no lawful apprehension or detention of appellant, there could be no conviction of assault under subdivision 5 of section 242 of the Penal Law for resisting an unlawful arrest, and the court so instructed the jury (Penal Law, § 246, subd. 3). That being so, appellant could not be convicted under section 244 of the Penal Law for assault in the third degree.

While aware of the difficulties confronting the police in maintaining law and order, we cannot condone the acts of the police officers disclosed by the present record. Appellant had never been in trouble with the authorities; had never been convicted. He is a married man living with his wife and two children. He saw active service for two years and four months with the " Sea Bees " during World War II and was given an honorable discharge at the close of the war by the Navy. The next seven years he worked for the Hygrade Products Co. He left that company of his own accord and went to work for the Niagara Frontier Transit Corp. as a bus operator and was still so employed at the time of his trial.

The judgment of conviction should be reversed and the indictment dismissed.

All concur. Present — McCURN, P. J., VAUGHAN, PIPER, WHEELER and VAN DUSER, JJ.

Judgment of conviction reversed, on the law and facts, and indictment dismissed.