Albert A. Oppido, J.
The defendant moves for an order suppressing certain tangible evidence. (U. S. Const., 4th and 14th Amdts.; N. Y. State Const., art. I, § 12; Mapp v. Ohio, 367 U. S. 643; People v. Loria, 10 N Y 2d 368.) The People maintain that the search and seizure was conducted as contemporaneous to and incidental to a lawful arrest. Pursuant to an order of this court, a hearing has been held to inquire into the facts and circumstances surrounding the aforesaid search and seizure. (Code Crim. Pro., § 813-c.)
At the hearing, the following facts were established: On the evening of September 19, 1965, at approximately 7:30 p.m., Officer Rogers and a brother police officer went to the defendant’s home in Seaford, Nassau County, New York. The purpose of their visit was to investigate a dog-bite complaint of one of the defendant’s neighbors. Officer Rogers knocked on the door and rang the bell. At first, there was no response. Then a light went on and Mr. Belcher came to the door. However, the defendant did not open the door. Officer Rogers called to the defendant, identified himself as a patrolman of the Nassau County Police Department, and said he Avould like to talk to him. According to the police officer’s testimony, the defendant turned from the door and walked into a more interior portion of the house. The police officers, avIio were outside of the house, then walked around the side of the house. Officer Rogers heard a voice saying: “ All right, come on, where are you?” Officer Rogers then returned to the front of the house. As he came around the side to the front of the house, Officer Rogers observed the defendant standing in front of his house brandishing a shotgun. Mr. Belcher was, at this time, waving a shotgun horizontally— left to right — pointed in the direction of the two police officers. Officer Rogers told the defendant not to get excited and that he just wanted to talk to the defendant. At this time, the defendant stated: “I don’t have to talk to you. I don’t *633 have to talk to anybody. Get off my property. I’ll blow your head off.” Then the police officers backed away, and Mr. Belcher backed away in the direction of the house, went into the house and turned off the lights. Then Officer Bogers left the premises, returned to his patrol car, and called for assistance.
In response to Officer Bogers’ call, Sergeant Jorgenson arrived at the scene at about 8:00 p.m. A light went on in the house. Sergeant Jorgenson and Officer Bogers approached the window, in which there was now a light. Sergeant Jorgenson called out to the defendant. He identified himself and said: “I would just like to talk to you, Mr. Belcher, we won’t harm you or your dogs. Just please come out.” The defendant came to the window and looked out. He then went away from the window. When the defendant came back to the window, he had a shotgun with him. Sergeant Jorgenson continued talking to the defendant. The Sergeant said: “We don’t want to harm you, no one wants to harm you, we just want to ask you some questions.” The Sergeant then told the defendant that he had a complaint that his dog bit a neighbor. The defendant left the window again and extinguished the lights.
At this point, Sergeant Jorgenson called for assistance. Thirty police officers arrived at the scene. A Police Inspector using a bullhorn called out to the defendant, saying they wanted to talk to him concerning the dog-bite complaint. Meanwhile, the police surrounded the defendant’s house and illuminated the area with floodlights. At approximately 11:30 p.m., the defendant opened the door and set free his two German shepherd dogs. About this time, tear gas was used. In addition, there was some shooting, during which the defendant was wounded in the shoulder. The defendant then walked out of his house. Officer Bogers arrested the defendant for the assault, in the second degree, which allegedly occurred at approximately 7:30 p.m. that evening.
Thereafter, the defendant was taken to Meadowbrook Hospital. At this time, Police Officer Eiseman and another officer, who were among the many police officers present at the scene, searched the defendant’s home. During the search the police seized two shotguns.
It is conceded that the police had neither a search warrant nor an arrest warrant. The People do not claim that the search was conducted pursuant to the defendant’s consent.
I. ENTRY UPON THE DEFENDANT’S PROPERTY
The defendant contends that his arrest was unlawful. He claims that the testimony of Police Officer Bogers, to the effect *634 that Mr. Belcher was brandishing a shotgun and threatening to blow off the police officers’ heads, neither constituted a crime nor furnished probable cause for an arrest. The defendant argues, in substance, that his actions were proper in that he was protecting his property from the invasion of trespassers.
It should be noted that Police Officer Rogers, Sergeant Jorgenson and their brother officers did not attempt to, nor did they in fact, forcibly enter the defendant’s home. It is uncontroverted that all officers remained outside the defendant’s home until the questioned search was conducted. Therefore, this is not a case of forcible entry such as occurred in People v. Field (15 N. Y. S. 2d 561); People v. Vest (11 A D 2d 1080); People v. Singleton (117 N. Y. S. 2d 114), or Titcomb v. State of New York (30 Misc 2d 902).
Generally, the entry into one’s home, without a search warrant, by a municipal officer pursuant to an ordinance enforeible by criminal prosecution has been held unlawful. (People v. Laverne, 14 N Y 2d 304.) However, here the police originally came upon the property to investigate a dog-bite complaint. It has also been held that entry for the purpose of administrative correction of a hazard immediately dangerous to health and public safety is constitutionally valid. (Frank v. Maryland, 359 U. S. 360.) It is clear to all, that it is the duty of the police to prevent crime or injury, if they can, and prompt inquiry into suspicious or unusual occurrences is indispensable, if orderly government is to continue. This duty certainly extends to circumstances arising upon a specific complaint.
In the instant case, a neighbor of the defendant complained to the police that he had been bitten by the defendant’s dog. Certainly, a dog bite or maintenance of vicious dogs might tend to disrupt public health and safety. Therefore, this court is of the opinion that the police may enter upon the private property of another for the purpose of investigating a potential hazard to the public health and safety although no crime has been committed. This holding, however, does not mean that the police may forcibly enter a person’s home under such described circumstances. (Cf. Frank v. Maryland, supra.)
II. THE AKREST
Since this court has decided that Police Officer Rogers and his brother officers were lawfully on the defendant’s private property, it must now turn to the question of whether the arrest of the defendant was lawful.
Section 177 of the Code of Criminal Procedure provides in relevant part: “ A peace officer may, without a warrant, arrest *635 a person. 1. For a crime, committed or attempted in his presence * * # 4. When he has reasonable cause for believing that a felony has been committed, and that the person arrested has committed it, though it should afterward appear that no felony has been committed ’ \
In the case at bar, the police officers were lawfully on the defendant’s property at 7:30 p.m. The testimony of the police officer clearly established that the defendant pointed a shotgun at bim and threatened to blow his head off. No matter what definition of probable cause is employed (Locke v. United States, 7 Crunch [11 U. S.] 339, 348; Henry v. United States, 361 U. S. 98; Brinegar v. United Stades, 338 U. S. 160; United States v. Rabinowitz, 339 U. S. 56; People v. Lane, 10 N Y 2d 347, 353) this court concludes that Officer Bogers had authority to arrest the defendant shortly before midnight for the crime of assault in the second degree. (Code Crim. Pro., § 177, subds. 1, 4; Penal Law, § 242.)
The cases cited by the defendant are distinguishable. In People v. Dreares (11 N Y 2d 906), the defendant had been arrested for loitering. Then the defendant allegedly assaulted the police officer. Subsequently, the defendant was acquitted of the charge of loitering. The acquittal, said the Court of Appeals and Appellate Division (15 A D 2d 204), established that the arrest for loitering was unlawful and, therefore, the defendant was entitled to resist the unlawful arrest. A similar fact pattern was also present in People v. Daniels (285 App. Div. 619) and People v. Massey (6 N Y 2d 893). In the instant case, the police officers came upon the property to investigate a dog-bite complaint. An arrest was not made nor was one attempted at that time. (Code Crim. Pro., § 177.) However, when this defendant pointed the shotgun and threatened the police officers with grave physical harm, he was not resisting an unlawful arrest, as in the Dreares, Daniels and Massey cases. He was committing an unwarranted assault.
The defendant also contends that the police could not arrest him four hours after the alleged assault. Section 177 of the Code of Criminal Procedure authorizes a peace officer to arrest without a warrant for a crime allegedly committed in his presence or where a felony has been committed and the person arrested has committed it. Here, the defendant allegedly committed a felony in the police officers’ presence. However, because the defendant, at the time of the alleged criminal act, was threatening the police officers with a shotgun, it would have been absurd to attempt an arrest at that time. It is obvious that the police officers’ restraint in not attempting to *636 arrest the defendant at 7:30 p.m., was a prime reason why both officers were not seriously injured. Moreover, there is no requirement in the law which compels a peace officer to obtain a warrant of arrest where a crime is committed in the presence of a police officer and where it is extremely difficult to effect the arrest at the time the crime was committed. (Code Crim. Pro., § 150 et seq.)
Based upon the foregoing discussion of the law and facts, this court concludes that the arrest of the defendant was lawful.
III. LEGALITY OP THE SEARCH
It is settled law that when a person is lawfully arrested, the police may, without a search warrant, make a contemporaneous search, depending on all of the circumstances of the case, of the place where the accused is arrested. (Agnello v. United States, 269 U. S. 20, 30; United States v. Rabinowitz, 339 U. S. 56; Preston v. United States, 376 U. S. 364, 367.)
In the Preston case, Justice Black, in writing the decision for the court, stated (p. 367): “ The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime — things which might easily happen where the weapon or evidence is on the accused’s person or under his immediate control.”
In the instant case, the arrest took place on the front lawn of the defendant’s home at approximately 11:55 p.m. The defendant was then suffering from a wound in his shoulder. After his arrest, the defendant was taken to Meadow-brook Hospital for treatment. Shortly, after midnight and after the defendant’s removal from the scene, Officer Eiseman and another officer searched the defendant’s home and seized two shotguns.
This court is of the opinion that the search of the defendant’s home, after his arrest on his front lawn, and after his removal from the scene, violated the rule of law enunciated in Preston v. United States (supra).
At the time of the search, the defendant was en route to Meadowbrook Hospital. There was no danger that the shotguns seized would be destroyed or used by the defendant to assault the police or to effect an escape. Moreover, it is clear that the shotguns were no longer under the accused’s immediate possession and control. ‘ ‘ Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest.” Preston v. United States (supra, p. 367).
*637 This court concludes, notwithstanding the facts that the search took place several feet from the place of arrest and about 10 minutes from the time of the arrest, under all of the facts and circumstances, that the search and seizure were not incidental to or contemporaneous with the lawful arrest of the defendant. Therefore, this court holds that the search of the defendant’s home, without a warrant, failed to meet the test of reasonableness under the Fourth Amendment. It is, therefore, ordered that the motion by the defendant to suppress certain tangible evidence, pursuant to section 813-c of the Code of Criminal Procedure, is hereby granted.